

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 4, 2019**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| CORETECH INDUSTRIES, LLC | § | CASE 18-34196-11 |
| | § | CHAPTER 11 |
| DEBTOR | § | |

**FINAL ORDER  APPROVING DEBTOR'S DISCLOSURE STATEMENT AND
CONFIRMING DEBTOR'S PLAN OF REORGANIZATION**

CAME ON FOR CONSIDERATION by the Court at the confirmation hearing held on April

2, 2019, the Debtor's Amended Plan of Reorganization filed March 22, 2019 ("Plan") as described

by that certain Amended Disclosure Statement filed March 22, 2019 ("Disclosure Statement"),  filed

by Coretech Industries, LLC, Debtor in the above-styled and numbered case. The Court having

entered its Order Conditionally Approving Debtor's Disclosure Statement: Fixing Time for Filing

Acceptance or Rejections of Debtor's Proposed Chapter 11 Plan of Reorganization and/or Objections

to Confirmation of Proposed Plan and Setting Hearing to Consider Final Approval of Debtor's

Disclosure Statement and Confirmation of Debtor's Proposed Chapter 11 Plan of Reorganization

on February 19, 2019. The Plan and Disclosure Statement having been transmitted to all creditors,

equity interest holders and parties-in-interest and the Court, after hearing the evidence presented,

concludes as follows:

1.      At least one Class of impaired creditors has voted to accept the Plan.

2.      The Plan complies with the applicable provisions of Title 11, and the Debtor, as the

plan proponent, has complied with the applicable provisions of Title 11.

3.      The Plan has been proposed in good faith and not by any means forbidden by law.

4.      The requisite number of impaired classes of claims or interests voting have voted to

accept the Plan.

5.      All payments made or promised to be made by the Debtor or any other person for

services or for costs and expenses in, or in connection with, the Plan, and incident to the case, have

been disclosed to the Court and are reasonable or, if to be fixed after Confirmation of the Plan, will

be subject to the approval of the Court.

6.      The identity, qualifications, and affiliations of the persons who are to serve the

Debtor, after Confirmation of the Plan, have been fully disclosed, and the appointment of such

persons to such offices, or their continuance therein, is equitable, and consistent with the interests

of the creditors and equity security holders and with public policy.

7.      The identity of any insider that will be employed or retained by the Debtor and his

compensation has been fully disclosed.

8.      The Plan does not affect any rate change of any regulatory commission with jurisdiction over the rights of the Debtor.

9.      The  Plan is not likely to be followed by further need for reorganization.

10.      All Section 1930 fees shall be paid by the Debtor on or before the Effective Date of the  Plan or as agreed to by the Debtor and the United States Trustee.

11.      The Plan is fair and equitable to any Class of creditors who did not vote to accept the Plan.

12.      The Plan does not affect any retiree benefits.

13.      The Debtor reserves the right to object to the amount and allowance of all claims after Confirmation.  All such objections shall be filed within sixty (60) days of the Effective Date, as defined in the Plan.

It is accordingly,

ORDERED ADJUDGED AND DECREED that the Debtor's Disclosure Statement is finally Approved. It is further,

ORDERED, ADJUDGED AND DECREED the  Plan of Reorganization, as attached hereto as Exhibit "A"  is confirmed except as modified below. It is further,

ORDERED, ADJUDGED AND DECREED all  priority claims, including priority claims of taxing authorities and other governmental units, will be paid in full in accordance with the priorities provided by Section 507 of the Bankruptcy Code. It is further,

ORDERED, ADJUDGED AND DECREED that the Plan, for all of the reasons set forth on the record at the hearing and in this Order, complies with all of the requirements of Section 1129 (b) of the Bankruptcy Code. It is further,

ORDERED, ADJUDGED AND DECREED the Debtor is hereby required to file quarterly operating reports with the United States Trustee until such time as the case in closed. The Debtor is further required to pay the United States Trustee quarterly fees until such time as the clerk of the court closes the case. It is further,

ORDERED, ADJUDGED AND DECREED the Debtor shall immediately serve this Order on all creditors of the estate.

### END OF ORDER ###

Eric A. Liepins

ERIC A. LIEPINS, P.C.

12770 Coit Road

Suite 1100

Dallas, Texas 75251

(972) 991-5591

(972) 991-5788 - telecopier


ATTORNEYS FOR DEBTOR


IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| CORETECH INDUSTRIES, LLC | § | Case no.18-34196 -11 |
| | § | |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

## AMENDED PLAN OF REORGANIZATION OF CORETECH INDUSTRIES, LLC

## DATED MARCH 21, 2019

**TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COME NOW, Coretech Industries, LLC, Debtor and Debtor-in-Possession in the above-referenced bankruptcy cases, and proposes the following Plan of Reorganization ("Plan"). The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtor into 8 separate classes.

## <u>ARTICLE I</u>

## <u>DEFINITIONS</u>

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.      "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.      "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.      **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.      **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.      **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.      **"Case"** shall mean this Chapter 11 case.

7. **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. **"Claimant"** shall mean the holder of a Claim.

9. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13. **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, presiding over these Chapter 11 reorganization cases, or any successor court of competent jurisdiction.

14. **"Creditor"** shall mean any person having a Claim against Debtor.

15. **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16. **"Debtor"** shall mean Coretech Industries, LLC.

17. **"Disbursing Agent"** shall mean the Reorganized Debtor.

18. **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19. **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20. **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21. **"Final Confirmation"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22. **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter

11 of the Code.

23.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, December 18, 2018.

24.     **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26.     **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.     **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.     **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held

therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C.

§506(a).

29.     **"Substantial Consummation"** shall occur upon Reorganized Debtor's

commencement of payments to creditors as provided in this Plan.

30.     **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of

the Code and shall include the claims of taxing authorities for taxes owed on the property retained

by the Debtor under this Plan.

31.     **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or

contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## **ARTICLE 2**

## **CERTAIN GENERAL TERMS AND CONDITIONS**

The following general terms and conditions apply to this Plan:

2.1     Claims and Debts:  Various types of Claims and Debts are defined in this Plan.  This

Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether

or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a)

of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan.

Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary

course of business will be paid by the Debtor according to their terms as they come due.

2.2 **Securities Laws**: The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3 **Time for Filing Claims**: With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants must file a proof of claim bearing the case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, on or before the Bar Date to participate under this Plan. Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan. Claims arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

2.4 **Modifications to Plan**: In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3

## TREATMENT OF UNCLASSIFIED CLAIMS

## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1     All trade and service debts and obligations, including ad valorem taxes for year 2019, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2     Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4

## DIVISION OF CREDITORS INTO CLASSES

4.1     Classification of Claims:  This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof.  Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

4.2     **Class 1**:     Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees (**Not Impaired)

    **Class 2**:     Consists of **Allowed Secured Claim of Veritex Bank** (Impaired)

    **Class 3**:     Consists of **Allowed Secured Claim of Nativas** (Impaired)

    **Class 4**:     Consists of **Allowed Secured Claim of Pacific Financial** (Impaired)

    **Class 5**:     Consists of **Allowed Secured Claim of Blue Ridge** (Impaired)

    **Class 6**:     Consists of **Allowed Secured Claim of Southwest Dynamics, Inc**. (Impaired)

    **Class 7**:     Consists of **Allowed Unsecured Creditors** (Impaired)

    **Class 8:**     Consists of **Allowed Insider Unsecured Creditors** (Impaired).

    **Class 9**:     Consists of **Allowed Equity Holders** (Impaired)

## ARTICLE 5

## TREATMENT OF CLASSES

5.1     <u>Satisfaction of Claims and Debts</u>: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

5.2     **Class 1 Claimants (Allowed Administrative Claims of Professionals and US**

**Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. This case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000 including Section 1930 fees. Section 1930 fees shall be paid in full prior to the Effective Date. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall be required to file post-confirmation operating reports until this case is closed. The Class 1 Claimants are not impaired under this Plan.

5.3     <u>**Class 2 Claimants**</u> **(Allowed Secured Claims of Veritex Community Bank**) are impaired and shall be satisfied as follows: On or about July 31, 2015 the Debtor executed that certain Promissory Note in the original amount of $360,000 ("Note #1") in favor of Veritex Community Bank ("Veritex"). The Note was secured by that certain Commercial Security Agreement providing Veritex with a properly perfected security interest in the equipment owned by the Debtor. On or about April 15, 2018 the Debtor executed that certain Promissory Note in the original amount of $150,000 ("Note #2") in favor of Veritex. Note #2 was secured by that certain Commercial Security Agreement providing Veritex with a properly perfected security interest in the equipment owned by the Debtor. As of the Petition Date the amount owed to Veritex under Note #1 and Note #2 was $349,198.28. Veritex shall be paid $355,000 in full satisfaction of any claims against the Debtor on the Effective Date.

The Class 2 claimant is impaired under this Plan.

5.4 **Class 3 Claimants (Allowed Secured Claim of Nativas Credit Corp**) is impaired and shall be satisfied as follows: On or about November 10, 2017, the Debtor executed that certain Equipment Finance Agreement ("Agreement") in favor of Partners Capital Group, Inc. ("Nativas")[1] for the purchase of that certain Cincinnati Gilbert CNC Floor Type Horizontal Boring Mill more fully described in the Agreement. As of the Petition Date the amount owed to Nativas under the Agreement was $55,119.91. Nativas shall be paid $55,119.91 in full satisfaction of any claims against the Debtor on the Effective Date.

The Class 3 claimant is impaired under this Plan.

5.5 **Class 4 Claimant (Allowed Secured Claim of Financial Pacific Leasing, Inc.**) is impaired and shall be satisfied as follows: On or about January 22, 2018, the Debtor executed that certain Equipment Finance Agreement ("Agreement") in favor of Partners Capital Group, Inc. ("Pacific")[2] for the purchase of that certain Cincinnati Gilbert CNC Floor Type Horizontal Boring Mill s/n 5D-70 as more fully described in the Agreement. As of the Petition Date the amount owed to Pacific under the Agreement was $74,184.53. Pacific shall be paid $74,184.53 in full satisfaction of any claims against the Debtor on the Effective Date.

---

[1]On November 11, 2017 Partners Capital Group, Inc. assigned its interest in the Agreement to Navitas Credit Corp.

[2]On January 23, 2018 Partners Capital Group, Inc. assigned its interest in the Agreement to Financial Pacific Leasing, Inc.

The Class 4 claimant is impaired under this Plan.

5.6     **Class 5 Claimant (Allowed Secured Claim of Blue Ridge Financial, LLC**) is impaired and shall be satisfied as follows: On or about May 10, 2017, the Debtor executed that certain Equipment Finance Agreement ("Agreement") in favor of Partners Capital Group, Inc. ("Blue Ridge")[3] for the purchase of that certain American 54" x 132" Engine Lathe s/n 79363. As of the Petition Date the amount owed to Blue Ridge under the Agreement was $21,073.43. Blue Ridge shall be paid $21,073.43 in full satisfaction of any claims against the Debtor on the Effective Date.

The Class 5 claimant is impaired under this Plan.

5.7     **Class 6 Claimant (Allowed Secured Claim of Southwest Dynamics, Inc)** is impaired and shall be satisfied as follows: Southwest Dynamics, Inc. ("Southwest") asserts that it preformed services on equipment of the Debtor and that it holds a secured claim as a result of the filing of a Lien Affidavit & Claim pursuant to Texas Property Code §52.022. Southwest has filed a Secured Proof of Claim in the amount of $85,308. The Debtor disputes the entire Southwest Claim and will file an objection to the Proof of Claim. The Debtor believes Southwest owes money to the Debtor for damages done by Southwest to the Debtor's equipment. In the event the Court determines that Southwest is owed any funds on its secured claim they will be paid from the remaining funds

---

[3]On May 22,2017 Partners Capital Group, Inc. assigned its interest in the Agreement to Blue Ridge Financial, LLC.

after the payment of creditors in Class 1 through 5 above. In the event Southwest is determined to have an unsecured claim it will be treated as a Class 7 Claim.

The Class 6 creditor is impaired under this Plan.

5.8 **Class 7 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: The Allowed Claims of Unsecured Creditors, except for the Class 8 Creditors, will share pro-rata in the Unsecured Creditor's Pool. The Debtor shall pay all remaining sales proceeds after payments of the Allowed Claims in Classes 1 through 6 above and all cash in the Debtor's possession as of the Effective Date into the Unsecured Creditor's Pool. The Class 7 creditors shall be paid on or before May 31, 2019.

The Class 7 creditors are impaired under this Plan.

5.9 **Class 8 Claimants (Allowed Unsecured Claims of Insiders)** are impaired and shall be satisfied as follows: The allowed unsecured claims of Richard Arn and Robert Foster shall receive no distribution under this Plan.

The Class 8 creditors are impaired under this Plan.

5.10 **Class 9 (Current Interest Holders)** are impaired under the Plan and shall be satisfied as follows: The current interest holders will receive no payments under the Plan, and the

current interest holders existing interests shall be cancelled.

The Class 9 Interest Holders are impaired under this Plan.

## ARTICLE 6

## MEANS FOR EXECUTION OF THE PLAN

6.1    **Action to be taken:** Any actions required to be taken by the Debtor on the Effective

Date may be taken by the Debtor before the Effective Date or immediately following the date of

Final Confirmation.

6.2    **No ongoing Operations:** The Debtor's obligations under this Plan will be satisfied

out of the sales proceeds and cash on hand of the Debtor.

6.3    Notwithstanding anything contained herein, the Reorganized Debtor shall have the

right to request the Court to disallow any claim of any Entity from which property is recoverable

under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under

Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or

turned over any such property, for which such Entity or transferee is liable.

## ARTICLE 7

## SECTION 1129(b)(2)

7.1     The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.  Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

## ARTICLE 8

## STATUS OF EXECUTORY CONTRACTS

8.1     All unexpired leases and executory contracts shall be assumed on or before the Effective Date.  To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan prior to the Effective Date, they are rejected.

## ARTICLE 9

## EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

9.2     Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor

## ARTICLE 10

## DISCHARGE

10.1     Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2     The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE 11

## AMENDMENTS TO THE PLAN

11.1     Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11. The Plan as modified becomes the Plan if circumstances warrant modification and the Court

approves of such modifications.

11.2    In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

**ARTICLE 12**

**EFFECT OF CONFIRMATION**

12.1    The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2    All property of the estate shall vest in the Reorganized Debtor upon Final Confirmation.

12.3    All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

12.4    All Debts that arose before the Confirmation Date and any Debt of a kind specified

in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt

is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502;

and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied

by this Plan.

## ARTICLE 13

## MISCELLANEOUS PROVISIONS

13.1     The obligations under this Plan to any particular Claim are governed by the laws

of the State constituting the situs of the Debt represented by that particular Claim described in this

Plan.

13.2     Equity Interest Holders are relieved from all liability, obligation or duty to initiate or

pursue any causes of action of Debtor against any Entity.

13.3     Any caption herein is for convenience only and does not affect the construction of the

Plan.

13.4     Any distribution pursuant to this Plan which remains unclaimed for a period of six

(6) months from the due date of such distribution is forfeited.

## ARTICLE 14

## RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

14.1    To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

14.2    To allow or disallow Claims.

14.3    To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

14.4    To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5    To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

14.6    To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

14.7    To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8    To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9    To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

14.10   To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

14.11   To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

14.12   To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13   To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14 To enter an order closing this case. The Debtor shall attempt to close the case within 6 months of the Effective Date.

Respectfully submitted,

Coretech Industries, LLC


  /s/ Richard Arn

By: Richard Arn

Its: Managing Member


ERIC LIEPINS, P.C.

ERIC LIEPINS

12770 Coit Road

Suite 1100

Dallas, Texas 75251

(972)991-5591

(972) 991-5788 - telecopier