

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 31, 2019**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CORETECH INDUSTRIES, LLC, | § | CASE NO. 18-34196-SGJ11 |
| Debtor. | § | (Chapter 11) |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT AS TO CREDITOR SOUTHWEST DYNAMICS, INC.'S SECURED STATUS

# CONTENTS

**MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT AS TO
CREDITOR'S SECURED STATUS** ............................................................................... 3

**I. Procedural Background** ......................................................................... 4

**II. The Undisputed Facts According to Each Party** ........................................ 6

   A. The Mostly Undisputed Facts Presented by SDI ........................................... 6

   B. The Mostly Undisputed Facts Presented by the Debtor ................................. 8

**III. Jurisdiction** .......................................................................................... 9

**IV. Summary Judgment Standard** ............................................................... 9

**V. Analysis: The Summary Judgment Evidence Establishes SDI's Entitlement to both a
Statutory Mechanic's Lien and Constitutional Lien. However, the Amount of SDI's Claim
Remains an Open Issue.** ................................................................................ 11

   A. SDI is Entitled to a Statutory Mechanic's Lien. .......................................... 11

      *1. There is No Genuine Dispute of Material Fact that Mr. Bomer Provided Labor and
Furnished Materials, Satisfying the First Element of Section 53.021(a).* ....................................... 12

      *2. There is No Genuine Dispute of Material Fact that Mr. Bomer Performed his Services in
Dallas, Texas, Satisfying the Second Element of Section 53.021(a).* ............................................ 13

      *3. There is No Genuine Dispute of Material Fact that Mr. Bomer Performed his Services
Pursuant to a Contract, Satisfying the Fourth Element of Section 53.021(a).* ............................. 14

      *4. When Section 53.021(a) is Construed Liberally, the Summary-Judgment Evidence Shows
There is No Genuine Dispute of Material Fact that Mr. Bomer Provided Labor and Materials for
the Construction of a Building.* ................................................................................................. 15

      *5. There is No Genuine Dispute of Material Fact that SDI Properly Perfected its Mechanic's
Lien in Accordance with Texas Property Code Sections 53.051-53.054.* ...................................... 20

   B. SDI is, Alternatively, Entitled to a Lien Under the Texas Constitution. .................... 22

      *1. SDI Qualifies as a "Mechanic," an "Artisan," and a "Materialman."* ............................. 23

      *2. SDI Furnished Labor and Materials to "Repair" an "Article."* ........................................ 25

   C. The Amount of SDI's Allowable Claim Remains an Open Question. ....................... 27

**VI. Conclusion** ........................................................................................... 28

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT AS TO CREDITOR'S SECURED STATUS

This contested matter arises in the context of a post-confirmation claim objection. Both the Claimant and the Reorganized Debtor (who is objecting to Claimant's Proof of Claim) have agreed that the court should preliminarily decide whether the underlying claim involved is secured or not, before adjudication of the actual *amount* of the claim. Specifically, disputed creditor Southwest Dynamics, Inc. ("SDI" or "Claimant") filed a motion for summary judgment ("*SDI's MSJ*") seeking to establish the validity of an alleged statutory mechanic's lien for services it rendered to install and repair several pieces of industrial equipment in a facility formerly leased by the Debtor CoreTech Industries, LLC ("CoreTech," the "Debtor," or sometimes "Reorganized Debtor" when referring to the post-confirmation time period).[1] The Reorganized Debtor filed a cross-motion for partial summary judgment ("*Debtor's MSJ*") on the issue of whether SDI is a secured creditor.[2] SDI then filed a response to *Debtor's MSJ*, asserting an artisan's lien under the Texas Constitution (hereon, a "constitutional lien") in addition to the statutory mechanic's lien it had originally asserted in *SDI's MSJ*.[3]

For the reasons set forth in this Memorandum Opinion and Order, summary judgment to SDI is granted and partial summary judgment to the Reorganized Debtor is denied. With regard to *SDI's MSJ*, the bankruptcy court has determined that SDI's summary judgment evidence establishes a properly perfected statutory mechanic's lien and, alternatively, a constitutional lien. However, because the Reorganized Debtor has an alleged $150,000 counterclaim that remains unadjudicated, the size of SDI's overall claim and, thus, the enforceability of SDI's lien, cannot

---

[1] Case No. 18-34196-sgj11, Docket No. 90. Hereon, docket entries will be cited as "ECF [#]" because all docket entries relate to the same bankruptcy case and are accessible through the CM/ECF system.
[2] ECF 91.
[3] ECF 101 at 2-3.

yet be determined. Accordingly, further proceedings are necessary to resolve the amount of SDI's secured claim.

## I.     <u>Procedural Background</u>

The Debtor was formed in 2014 to provide industrial machining services.[4] After operating at mere break-even for several years, the Debtor decided to file Chapter 11 bankruptcy on December 18, 2018, to accomplish an orderly sale of all of its assets and use the proceeds to pay creditors.[5] SDI filed Proof of Claim No. 6-1 in the Debtor's bankruptcy case on February 8, 2019, asserting secured creditor status for alleged installation and repair services provided by SDI's principal and owner, Mr. Richard Bomer.[6] Then, on March 22, 2019, the Debtor filed its *Objection to Proof of Claim 6* (hereon, "*Objection to POC*"), arguing that SDI's proof of claim should be denied because (a) SDI attached no supporting documentation and (b) SDI owed the Debtor $150,000 for damaging the machine it allegedly repaired, which would more than offset the entire $85,308 amount claimed in SDI's Proof of Claim No. 6-1.[7] In response, SDI amended its proof of claim on April 24, 2019, adding documentation to support its claim.[8] Shortly thereafter, the parties appeared at a nonevidentiary hearing to announce a settlement and, on May 2, 2019, the Debtor filed its *Motion of CoreTech Industries, LLC for Approval of Proposed Settlement Agreement* (the "*Settlement Motion*"), in which the parties proposed to allow SDI's secured claim in the amount of $32,500.[9]

---

[4] *Amended Disclosure Statement of CoreTech Industries, LLC Pursuant to Section 1125 of the Bankruptcy Code Dated March 21, 2019* (hereon, the "*Disclosure Statement*"), ECF 53.

[5] *Id.*; ECF 1.

[6] Proof of Claim No. 6-1; *see also SDI's MSJ* at 1-2.

[7] ECF 56 at 1-2. The bankruptcy court notes that, apart from the incomplete oral testimony of Mr. Arn, the Debtor's Principal, the Debtor's counterclaim for $150,000 remains, at this time, largely unsubstantiated by admissible evidence.

[8] Proof of Claim No. 6-2.

[9] ECF 70.

From the outset of the Debtor's bankruptcy case, the Debtor was simultaneously working to confirm a plan and resolve disputes with SDI. Prior to the *Settlement Motion*, the bankruptcy court entered a final order confirming the Debtor's *Amended Plan of Reorganization of CoreTech Industries, LLC Dated March 21, 2019* (the "*Chapter 11 Plan*").[10] The *Chapter 11 Plan* treated SDI as a disputed secured creditor and asserted that the Debtor owed SDI nothing, but also contemplated paying SDI out of a pool of funds that would otherwise available for general unsecured creditors, in the event that SDI was determined to hold a valid secured claim.[11] Thus, general unsecured creditors had a vested interest in ensuring that SDI's claim was either disallowed or treated, at most, as an allowed unsecured claim (so as to participate *pro rata* in the distribution to general unsecured creditors). KeyStaff, Inc. ("KeyStaff") was one such general unsecured creditor. KeyStaff filed an *Objection to the Motion of CoreTech Industries, LLC for Approval of Proposed Settlement Agreement*, arguing that the proposed payout of $32,500 to SDI as a "secured creditor" unfairly depleted the distribution to the unsecured creditors in light of the *Objection to POC*, which, as mentioned, asserted a $150,000 counterclaim against SDI. [12]

On August 15, 2019, the bankruptcy court held a hearing on the *Settlement Motion* in which the Debtor, SDI and KeyStaff each made appearances and argued on the record (the "Settlement Motion Hearing"). At the hearing, the Debtor stated that there was approximately $100,000 remaining from the earlier sale of substantially all the Debtor's assets during the case (including assets upon which SDI performed work) to pay unsecured creditors and/or SDI. Although the subject of the Settlement Motion Hearing was the fairness of the *Settlement Motion*, the Debtor and SDI came prepared to present evidence regarding the underlying dispute over the validity of

---

[10] ECF 65.
[11] *Id.* at 17-18.
[12] ECF 72 at 2-4.

SDI's secured claim, in light of the KeyStaff objection. The bankruptcy court ultimately adjourned the hearing, due to time constraints. In doing so, the court announced concerns about the bona fides of the *Settlement Motion* and the record developed thus far in support. After the hearing, the Debtor withdrew the *Settlement Motion*. The Debtor and SDI, in subsequent status conferences, announced that they both believed that—rather than setting the Claim Objection for hearing—the court should determine in a Summary Judgment context whether SDI's claim (whatever the amount) was secured or not. The Debtor and SDI thereafter filed their motions for summary judgment and responses and argued before the bankruptcy court on November 25, 2019. At the conclusion of the hearing, the court took the matter under advisement.

## II.     <u>The Undisputed Facts According to Each Party</u>

For the most part, both parties agree on the underlying facts. Importantly, it is ***undisputed*** that, at the time this controversy arose, the Debtor owned the machinery and equipment that SDI was hired to repair and install but did ***not*** own the real property on which the machines were installed and on which the Debtor operated its business.[13]

### A.    <u>The Mostly Undisputed Facts Presented by SDI</u> [14]

SDI received a call from the Debtor on or about October 1, 2015, seeking assistance with the installation of machinery and equipment at the Debtor's new roll-conditioning facility.[15] The next day, SDI's Principal and Owner, Mr. Richard Bomer, went out to meet with Mr. Richard Arn, Principal of the Debtor.[16] The parties entered into an oral contract whereby SDI would install and

---

[13] *See* Debtor's Schedule A/B, ECF 10; *see also Debtor's MSJ*, Exh. A (attaching SDI's *Partial Release of Lien*, which expressly released the Debtor's landlord and owner of the real property, Turner's Machinery, Inc., from SDI's purported lien. The *Partial Release of Lien* explicitly excluded the Debtor from the release.).

[14] In this Memorandum Opinion, footnote references to "Exh." are references to the exhibits that were attached to each party's motion for summary judgment, which were presented to the bankruptcy court for hearing on November 25, 2019. SDI's exhibits were numbered "1" through "19" while the Debtor's exhibits were labeled "A" through "B."

[15] *SDI's MSJ*, ECF 90 at 1.

[16] *Id.*

service heavy-duty lathes, reconditioned electronic systems, and other equipment to help get the Debtor's new facility up and running.[17] Yet, most of the equipment was used and, according to SDI, in poor condition, such that it had to be completely rebuilt to operate.[18] So, over the course of roughly eight months, Mr. Bomer spent nearly 800 hours at the Debtor's plant to install and/or repair a LeBlond Lathe, a Sub-Arc Welder, a Lehmann Lathe, a Shaw Box Overhead Crane, a Gardner-Denver Air Compressor, and a Giddings & Lewis Mill (hereon, the "machines").[19] SDI presented summary-judgment evidence in the form of deposition testimony of Mr. Arn that, after hiring SDI, the Debtor completed a $300,000 contract which, according to SDI, proves that Mr. Bomer's repairs and installations were successful.[20] SDI allegedly incurred $23,789 of materials expenses and billed the Debtor for a total of $125,926, including labor at $125 per hour.[21] SDI billed the Debtor for services rendered. Attached to *SDI's MSJ* were copies of the invoices that SDI sent the Debtor, which are dated from February 2, 2016 through August 1, 2016.[22] The Debtor allegedly refused to pay more than ten invoices totaling $40,618.40 to SDI for Mr. Bomer's services, leaving a balance of $85,307.60.[23]

At that point, sometime in May of 2016, SDI stopped performing services for the Debtor and retained counsel.[24] Counsel for SDI sent copies of the invoices to the Debtor's purported attorney at the time, one Mr. King of Oklahoma, and also sent a notice of intent to lien to the Debtor's real property landlord, Turner's Machinery, Inc.[25] SDI duly recorded its *Lien Affidavit &*

---

[17] *Id.*
[18] *Id.* at 2.
[19] *Id.*
[20] *Id.* at 2; Exh. 4.
[21] *Id.* at 2; Exh. 5.
[22] *Id.* at Exhs. 2, 14. The itemized entries on the invoices reflect billings for a mixture of labor, travel time, and materials.
[23] *Id.* at 2; Exh. 2 at 2; Exh. 3.
[24] *Id.* at 2.
[25] *Id.* at 3.

*Claim* with the Dallas County Clerk on August 12, 2016—within four calendar months and fifteen days of completion of the work provided, as required by the Texas Property Code.[26] Thereafter, SDI filed its *Original Petition* in Dallas County court on August 22, 2016.[27] A different attorney for the Debtor, Mr. Howard Klatsky, filed an *Original Answer* in the state action.[28] The parties litigated in state court for two years, during which time SDI filed its *Second Amended Petition* on May 4, 2018.[29] The state court litigation proceeded a few more months until it was stayed when the Debtor filed its Voluntary Petition on December 18, 2019.[30]

B.   *The Mostly Undisputed Facts Presented by the Debtor*

The Debtor does not dispute that SDI was originally hired to install equipment at the Debtor's plant, which it leased from Turner's Machinery, Inc.[31] The Debtor also does not dispute that it did not pay "the disputed invoices," which is the term designated by the Debtor for the invoices it refused to pay.[32] The Debtor ***does*** dispute precisely what services SDI performed (*e.g.* whether SDI ***repaired*** the machines), whether SDI performed the services properly, whether the Debtor paid for all agreed-upon services, and whether SDI damaged the Debtor's equipment.[33] However, apart from the oral testimony of Mr. Arn at the August 15, 2019 hearing on the *Settlement Motion*, the Debtor has presented no evidence in either the *Debtor's MSJ* or the *Debtor's Response* that Mr. Bomer caused damage to the machines, let alone $150,000 worth.[34] It

---

[26] *Id.* at Exh. 14; *see* Tex. Prop. Code Ann. §§ 53.051, 53.053 (West 2019).

[27] *Id.* at 3; Exh. 1.

[28] *Id.* at Exh. 17.

[29] *Id.* at 3; Exh. 2.

[30] ECF 1.

[31] *CoreTech Industries, LLC's Response to Motion of Southwest Dynamics, Inc.'s for Summary Judgment and Brief in Support Thereof* (hereon, "*Debtor's Response*"), ECF 98 at 2.

[32] ECF 91 at 2, ¶ 7.

[33] *Id.* at 2, ¶ 4.

[34] *See* ECF 91, 98. The court has discretion to take judicial notice of evidence in the record beyond the documents attached to the summary judgment motions. *See* Fed. R. Civ. P. 56(c)(3); *see also Sherman v. Greenstone Farm Credit Services, ACA*, Case No. 3:11-CV-0710-N, 2011 WL 2038573, at *3 n. 6 (N.D. Tex. May 24, 2011) (citing Fed. R. Evid. 201(b), (f)) (noting that in determining the merits of the motions for summary judgment, the court has discretion to take judicial notice of all documents filed in the action).

is further undisputed that on August 12, 2016, SDI filed a *Partial Release of Lien* that released only Turner's Machinery, Inc.—the Debtor's landlord—from any lien SDI may have had on the real property.[35]

Finally, it is undisputed that, after a hearing upon the *Debtor's Motion for Authority to Sell Property of the Estate Under 11 U.S.C. § 363(b) and (f)*, this court entered its *Order Granting Debtor's Motion for Authority to Sell Property of the Estate Under 11 U.S.C. § 363(b) and (f)*.[36] It is further undisputed that the bankruptcy court approved, and the Debtor ultimately consummated, a sale of all of the Debtor's assets, comprised primarily of the machines the Debtor owned, to a third-party called SMS Group, LLC, generating proceeds to pay creditors.[37] The assets sold included the machinery on which SDI had performed services.

## III.      Jurisdiction

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (K), and (O). The bankruptcy court has authority to adjudicate this matter pursuant to Miscellaneous Rule No. 33 for the Northern District of Texas.

## IV.      Summary Judgment Standard

To succeed on summary judgment, SDI must first establish that there is no genuine issue of material fact pertaining to the existence of its lien.[38] "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[39] Disputes regarding material facts are genuine if a

---

[35] ECF 91 at Exh. B; ECF 98 at 3. The *Partial Release of Lien* is explicitly limited to Turner's Machinery, Inc. and does not release the Debtor from any purported liens.

[36] ECF 13, 35.

[37] ECF 53, 65.

[38] *See In re Rotary Drilling Tools USA, LLC*, Case No. 16-33433, 2017 WL 4990440, at *3 (Bankr. S.D. Tex. Oct. 27, 2017) (hereon, "*In re Rotary Drilling*").

[39] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056 (incorporating the Rule 56 standard into adversary proceedings).

reasonable jury could return a verdict for the nonmoving party.[40] In order to support or refute an assertion that a genuine issue of material fact exists, the parties must cite to particular parts of the record to demonstrate that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[41] The court views the facts and evidence in the light most favorable to the nonmoving party at all times.[42] The court has discretion to consider all evidence in the record, beyond simply the evidence attached to the summary-judgment motions.[43] Although all evidence in the record may be considered, the court refrains from making credibility determinations and weighing the evidence.[44] Yet, a party may nevertheless object that evidence cited in the record cannot be produced as admissible evidence.[45]

The evidentiary support needed to meet the initial summary judgment burden depends on whether the moving party bears the ultimate burden of proof at trial.[46] If the moving party bears the burden of proof on an issue, they must present adequate evidence to entitle the moving party to judgment at trial.[47] If the movant establishes this evidence, the burden then shifts to the nonmovant to cite to specific evidence that a genuine issue of material fact exists.[48] The nonmovant must also articulate the manner in which that evidence supports that party's claim.[49] Even if the movant meets the initial burden, the motion should be granted only if the nonmovant cannot show a genuine dispute of material fact.[50]

---

[40] *Anderson v. Liberty Lobby, Inc.*, 477 US. 242, 248 (1986).
[41] Fed. R. Civ. P. 56(c)(1).
[42] *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014).
[43] *See* Fed. R. Civ. P. 56(c)(3).
[44] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[45] Fed. R. Civ. P. 56(c)(2).
[46] *See In re Rotary Drilling*, 2017 WL 4990440, at *2.
[47] *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).
[48] *Id.* (citing Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324).
[49] *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[50] *Id.* (citing *Duffie v. U.S.*, 600 F.3d 362, 371 (5th Cir. 2010)).

## V.     Analysis: The Summary Judgment Evidence Establishes SDI's Entitlement to both a Statutory Mechanic's Lien and Constitutional Lien. However, the Amount of SDI's Claim Remains an Open Issue.

*SDI's MSJ* is granted such that SDI's claim—whatever the amount—is entitled to secured status. First, with regard to a statutory lien, there are two discrete issues before the court: (1) whether the work Mr. Bomer performed satisfied the elements of Section 53.021(a) of the Texas Property Code, so as to entitle SDI to a statutory mechanic's lien; and, if so, (2) whether SDI properly perfected that lien in accordance with Section 53.052(a) of the Texas Property Code.[51]

### A.     *SDI is Entitled to a Statutory Mechanic's Lien.*

The relevant Texas Property Code provision regarding establishment of a statutory mechanic's lien reads as follows:

> A person has a lien if: (1) the person labors, specially fabricates material, or furnishes labor or materials for construction or repair in this state of: (A) a house, building, or improvement; . . . and (2) the person labors, specially fabricates the material, or furnishes the labor or materials under or by virtue of a contract with the owner or the owner's agent, trustee, receiver, contractor, or subcontractor.[52]

Thus, there are, essentially, four elements to establish a statutory mechanic's lien.   The lien claimant must have: (1) labored, specially fabricated material, or furnished labor or materials; (2) in the state of Texas; (3) for the construction or repair of a house, building, or improvement; (4) pursuant to a contract with the owner of the property to be encumbered by the lien or a party with legal authority to authorize the work on the property, such as the owner's agent. Importantly, "[i]t is a rule of long standing that the mechanic's and materialman's lien statutes of [Texas] will be liberally construed for the purpose of protecting laborers and materialmen."[53] As explained herein,

---

[51] Tex. Prop. Code § 53.021(a) sets forth the elements to determine whether a laborer or materialman is entitled to a statutory mechanic's lien, and Tex. Prop. Code §§ 53.051-53.054 set forth the requirements for perfecting a statutory mechanic's lien.
[52] Tex. Prop. Code Ann. § 53.021(a) (West 2019).
[53] *Hayek v. W. Steel Co.*, 478 S.W.2d 786, 795 (Tex. 1972); *see also In re Rotary Drilling*, 2017 WL 4990440, at *3 (citing *Hayek*).

SDI's evidence demonstrates that Mr. Bomer (1) labored and furnished materials, (2) in Texas, (3) for the construction or repair of a building, (4) pursuant to a contract with the Debtor, who owned the machines at the time. The Debtor has submitted no evidence to dispute the four elements of this section.[54] Instead, the Debtor relies on legal argument—essentially proposing that there are only three ways that a party may obtain a lien on *personal property*, none of which apply here: (a) through the filing of a UCC-1 financing statement to perfect a security interest under *Article 9* of the Texas Business and Commerce Code; (b) through the sale of property and the obtaining of a purchase money security interest; and (c) through retaining of possession of the personal property. The Debtor adds that, whatever lien SDI might have asserted could only have attached to the *real property* and was, therefore, released.[55] The Debtor's arguments and evidence fail to address the two discrete issues before the court: (1) whether the work Mr. Bomer performed satisfied the elements of Section 53.021(a) of the Texas Property Code and entitled SDI to a statutory mechanic's lien in the underlying personal property; and (2) if so, whether SDI perfected that lien in accordance with Section 53.052(a).

1. *There is No Genuine Dispute of Material Fact that Mr. Bomer Provided Labor and Furnished Materials, Satisfying the First Element of Section 53.021(a).*

---

[54] *See Debtor's MSJ*, ECF 91 (attaching only SDI's Proof of Claim No. 6-2 and SDI's *Partial Release of Lien* as evidence); *Debtor's Response*, ECF 98 (attaching no evidence). At the Settlement Motion Hearing held on August 15, 2019, the Debtor presented the testimony of Richard Arn, President and Owner of CoreTech Industries, LLC. Mr. Arn essentially testified that SDI's agent, Mr. Bomer, made misrepresentations regarding his qualifications to work on the Debtor's machines and that, as a result, Mr. Bomer caused $150,000 worth of damage to the machines. However, Mr. Arn did not refute that Mr. Bomer provided labor and materials or otherwise dispute SDI's claim that Mr. Bomer spent 800 hours at the Debtor's roll facility repairing and installing the machines. In fact, the uncontroverted summary-judgment evidence shows that the Debtor paid over $40,000 worth of invoices, which supports SDI's argument. The next question is whether Mr. Bomer's labor was to construct a house, building or improvement, as is required by the statute. As discussed in more detail below, the court finds that Mr. Bomer's labor extended to a building because installation of the machines in question enabled the Debtor to begin operating its roll facility. With respect to the fourth element, the bankruptcy court notes that Mr. Bomer performed services for the Debtor pursuant to an oral contract that was completed in under a year and, thus, was not subject to the Statute of Frauds.

[55] *See Debtor's MSJ*, ECF 91 and *Debtor's Response*, ECF 98.

SDI's summary-judgment evidence demonstrates there is no genuine dispute whether Mr. Bomer provided labor and furnished materials to the Debtor. Thus, SDI satisfied the first element of Section 53.021(a). Section 53.021(a)(1), titled "Persons Entitled to Lien," limits the availability of the lien to persons that "labor[], specially fabricate[] material, or furnish[] labor or materials. . ."[56] Attached to *SDI's MSJ* are invoices that reflect a mixture of labor and materials.[57] The Debtor submitted no evidence to create a genuine dispute of material fact whether SDI furnished labor and materials. In the *Debtor's MSJ*, the Debtor states that it "hired Dynamic to install the equipment," and disputes only "what work Dynamic performed, whether the work was preformed [sic] properly, whether all agreed upon work was paid for by Coretech, and whether Dynamic damaged the Debtor's equipment."[58] Thus, the summary judgment evidence demonstrates there is no genuine dispute of material fact whether SDI's agent, Mr. Bomer, furnished labor and materials, and the first element of the statutory mechanic's lien is satisfied.

> 2. *There is No Genuine Dispute of Material Fact that Mr. Bomer Performed his Services in Dallas, Texas, Satisfying the Second Element of Section 53.021(a).*

Although the parties dispute whether Mr. Bomer ***repaired*** the machines, both parties agree at least that SDI was hired to ***install*** heavy machinery at the Debtor's roll facility.[59] The Debtor's Voluntary Petition lists its principal place of business address at 8300 South Central Expressway, Dallas, TX 75241.[60] Thus, there is no genuine dispute whether the services potentially giving rise to a statutory mechanic's lien were performed in Texas. The second element of Section 53.021(a) is satisfied.

---

[56] Tex. Prop. Code Ann. § 53.021(a)(1) (West 2019).
[57] *See, e.g.*, Invoice #13731 dated 2/2/2016, *SDI's MSJ* at Exh. 2, which shows $7,000 billed for machinery repair service at $125/hour and three separate billings for an X Axis Encoder with Freight, an X Axis Encoder Cable, and a Lube Pump and Motor Assembly.
[58] ECF 91 at 2.
[59] *See id.*; *see also SDI's MSJ*, ECF 90 at 1, Exh. 2.
[60] ECF 1.

> ### 3. There is No Genuine Dispute of Material Fact that Mr. Bomer Performed his Services Pursuant to a Contract, Satisfying the Fourth Element of Section 53.021(a).

Skipping over to the fourth element of Section 53.021(a), the summary-judgment evidence demonstrates that Mr. Bomer performed services pursuant to a contract with the Debtor and that the Debtor owned the machines Mr. Bomer installed and serviced. In *SDI's MSJ*, SDI asserts that "the parties entered into an oral agreement whereby Southwest would install and service heavy-duty lathes, reconditioned electronic systems and other equipment for CoreTech, which CoreTech had recently purchased."[61] The invoices that SDI attached to its motion support its assertion of the facts.[62] The Debtor refutes neither that it had a contract with SDI nor that it owned the machines SDI was hired to install and service.[63] Rather, according to the Debtor, "the Debtor purchased certain machinery to be used in its operation" and "[t]he Debtor hired Dynamic to install the equipment."[64] Consequently, there is no genuine dispute of fact whether Mr. Bomer performed services pursuant to a contract with the Debtor, who was the owner of the equipment. Although the Debtor does not argue that the oral contract is invalid under the Statute of Frauds, as with any oral agreement, there is potentially a Statute of Frauds issue. However, the court determines that there is no genuine dispute of material fact that the agreement was for services that could be performed in less than one year.[65] Given that the summary-judgment evidence demonstrates there is no genuine dispute of material fact whether Mr. Bomer performed services on machines owned

---

[61] ECF 90 at 1.

[62] *Id.* at Exhs. 2, 14.

[63] *See* ECF 91, ECF 98.

[64] ECF 91 at 2; *see also* ECF 98 at 2 ("The undisputed facts show that Southwest was originally hired to install equipment at the Debtor's leased location.").

[65] *See, e.g., Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (citing Tex. Bus. & Com. Code § 26.01) ("Where the parties do not fix the time of performance and the agreement itself does not indicate that it cannot be performed within one year, the contract does not violate the statute [of frauds]"); *see also* ECF 90 at 1 ("For the period from October 2, 2015 through May 2016, Mr. Bomer spent 800 hours at CoreTech's plant working to install or repair [machinery]. . . ").

by the Debtor, pursuant to a valid oral contract with the Debtor, SDI has satisfied the fourth element of Section 53.021(a).

> 4. *When Section 53.021(a) is Construed Liberally, the Summary-Judgment Evidence Shows There is No Genuine Dispute of Material Fact that Mr. Bomer Provided Labor and Materials for the Construction of a Building.*

Returning back to the third element now—whether the labor involved was in connection with the construction or repair of ***a house, building, or improvement***—this element requires more analysis. The uncontroverted summary-judgment evidence certainly establishes that Mr. Bomer worked to install machines ***in*** the Debtor's building. Case law has made clear that the terms "construction" and "building" should be construed liberally to protect laborers in Texas. The court concludes that Mr. Bomer provided labor and material for the "construction" of a "building," when those terms are construed liberally, and SDI has satisfied the third element of Section 53.021(a).

The key is in the classification of the machines that Mr. Bomer serviced and installed. While the machines are arguably neither houses, buildings, or improvements, as the statutory text requires, it appears that the machines are "***trade fixtures***," which is a type of equipment that is affixed to the realty with permanent intent to enable the operation of a trade or business.[66] Trade fixtures have given rise to statutory mechanic's liens under bankruptcy case law interpreting the Texas mechanic's lien statutes.[67]

The bankruptcy court considers Judge Harmon's detailed and meticulous opinion in *In re Demay Intern. LLC*, which affirmed the bankruptcy court's ruling in favor of the mechanic's lien

---

[66] *See In re Demay Intern. LLC*, 471 B.R. 510, 526 (S.D. Tex. 2012) (affirming the bankruptcy court's order granting a statutory mechanic's lien and reaffirming the longstanding definition of "***trade fixtures***" under Texas case law as "such articles as may be annexed to the realty by the tenant to enable him to properly or efficiently to [sic] carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which he is engaged while occupying the premises, and which can be removed without material or permanent injury to the freehold. . .") (quoting *C.W. 100 Louis Henna, Ltd. v. El Chico Restaurants of Texas, L.P.*, 295 S.W.3d 748, 754-55 (Tex. App.—Austin 2009, no pet.)).
[67] *Id.*

claimant, particularly instructive.[68] The posture of that case was very similar to the one now before this court. After leasing property for manufacturing and general industrial use, a debtor, Demay, contracted with McCaffety, an electrician, "to install conduit copper wire, light fixtures, panels, breakers and connections to (1) equipment (machines and air conditioning), (2) offices, (3) plugs, and (4) switches, in addition to incoming primary service and outgoing secondary service to feed low voltage and high voltage panels, and electrical controlling mechanisms" (*i.e.* electrical components).[69] Judge Harmon agreed with the bankruptcy court's finding that the electrical components were ***trade fixtures***.[70] A dispute over the nature of the electrical components arose when Demay's lease terminated and its bankruptcy estate was sold because, even though Demay purchased the electrical components, its lease with the landlord included a term that, upon termination of the lease, "***improvements*** to the premises become property of the landlord."[71] A secured creditor with an interest in all of Demay's property objected to McCaffety's proof of secured claim and argued that "there was no valid materialman's lien on the fixtures because such a lien can only attach to the leasehold, not to ***personalty*** under Texas Property Code Section 53.002."[72] Affirming the bankruptcy court's finding that the electrical equipment "was not merely plugged in" but was "incorporated into the building leased by Demay for its business," Judge Harmon held that a "mechanic's lien extends to fixtures as well as to the land to which they are necessarily connected."[73]

---

[68] 471 B.R. 510 (S.D. Tex. 2012).

[69] *Id.* at 514.

[70] *Id.* at 529.

[71] *Id.* at 525 (emphasis added). Therefore, the outcome of the case turned, in part, on whether *trade fixtures* fell within the definition of improvements.

[72] *Id.* at 529. The secured creditor, GSL, argued this position because McCaffety's purported mechanic's lien arose first-in-time and would have taken priority over GSL's security interest.

[73] *Id.* at 530 (citing 51 Tex. Jur. 3d. Mechanic's Liens § 27 and *First Nat. Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 266 (Tex. 1974)).

Applying the same analysis as *Demay*, there is no genuine dispute of material fact that Mr. Bomer's services amounted to "construction" of a "building," which would satisfy the third element of Section 53.021(a) and entitle SDI to a mechanic's lien. As in *Demay*, where a contractor was hired to install a trade fixture (*i.e.* various electrical components) into a building to enable it to operate as a manufacturing plant, here, the Debtor hired SDI to install industrial machines so that the Debtor could begin operating its leased building as a functional machine shop.[74] And, as in *Demay*, where installation of the electrical components rose to the level of incorporation into the building, here, the evidence shows that SDI's work to install the machines enabled the Debtor to begin operations in its facility and complete at least one job, which generated $300,000 of income for its business.[75]

Furthermore, industrial machines, like electrical components, are not "merely plugged in," but are incorporated into the building and, thus, included in the property reached by statutory mechanic's liens.[76] First, Texas Property Code Section 53.022(a), aptly titled "Property to Which Lien Extends," states: "The lien extends to the house, building, ***fixtures***, or improvements. . ."[77] Because Texas law treats trade fixtures as a subset or special type of fixture, the language of the Texas Property Code supports SDI's lien on the machines themselves.[78] Second, longstanding Texas jurisprudence treats industrial machinery, like the lathe and welder and crane that the Debtor

---

[74] *See Id.* at 514; ECF 91 at 2; ECF 90 at 2, Exh. 2.
[75] *See Demay*, 471 B.R. at 530; ECF 90 at 2, Exh. 4.
[76] *See Whirlpool*, 517 S.W.2d at 266 (contrasting refrigerators, which are merely plugged in and, thus, do not give rise to a mechanic's lien, with garbage disposals, which are incorporated into the building and give rise to a mechanic's lien).
[77] Tex. Prop. Code Ann. § 53.022(a) (West 2019) (emphasis added). *See also Demay*, 471 B.R. at 528 ("Chattel that have been incorporated into realty become 'fixtures' that are subject to a statutory mechanic's lien.").
[78] *In re Demay Intern., LLC*, 431 B.R. 164, 176 (Bankr. S.D. Tex. 2010), *aff'd sub nom. In re Demay Intern. LLC*, 471 B.R. 510 (S.D. Tex. 2012) (quoting *Jim Walter Window Components v. Tpk. Distrib. Ctr.*, 642 S.W.2d 3, 5 (Tex. App.—Dallas 1982, writ ref'd n.r.e.)).

hired SDI to install, as trade fixtures.[79] Third, in a more recent, 205-page opinion, Judge Martin

Glenn found that numerous industrial machines (*e.g.* presses that stamp sheet metal into auto body

parts and conveyor systems that were bolted to the building) that General Motors owned but

ultimately removed and liquidated in its bankruptcy case were fixtures subject to a lien perfected

by fixture filings.[80]

Here, the summary-judgment evidence shows that there is no genuine dispute that the

machines SDI was hired to install are trade fixtures and that the installation required Mr. Bomer

to perform 800 hours of engineering services to convert a building into an operational machine

shop.[81] Furthermore, there is also no genuine dispute that, unlike equipment such as refrigerators,

the machines SDI was hired to install could not be "merely plugged in," otherwise, why would the

Debtor have engaged SDI over the course of nearly eight months and paid over $40,000 for the

work without dispute? On the contrary, the unrefuted evidence demonstrated to the court that these

machines are complex pieces of industrial equipment that require highly specialized training and

---

[79] *See Phelan v. Boyd*, 14 S.W. 290, 294-95 (Tex. 1890) ("It was held . . . that a sugarmill erected by the owner upon land passed by the conveyance of the land. Mill machinery attached to the engine by a belt that could be detached and moved without injury to the house or machinery, but which was necessary to the use and operation of the mill, and which was put into the mill with the intention of establishing a permanent flouring and grist mill, was held to be a fixture . . . A chattel may be annexed to the inheritance, and yet be removed without the [real property] owner's consent. In such case it would be a removable fixture, or, in other words, a chattel still, subject to be conveyed as any other chattel . . . *[T]he lathes, being a necessary part of the machinery for carrying on the business of the machine-shop, were fixtures whether they were bolted to the floor or not*.") (emphasis added).

[80] *See In re Motors Liquidation Co.*, 576 B.R. 325, 340, 382 (Bankr. S.D.N.Y. 2017), *leave to appeal denied sub nom. Motors Liquidation Co.*, 17-CV-8712(AJN), 2018 WL 4284286 (S.D.N.Y. Sept. 7, 2018). Judge Glenn held that only the equipment that the Debtor leased, rather than owned, were not fixtures. Although Judge Glenn applied Michigan law in his opinion, Texas courts have employed a similar three-factor test to distinguish fixtures subject to a real-property lien from equipment and other personalty not subject to a lien. *See Demay Intern. LLC*, 471 B.R. at 528 ("*In Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex. 1985), the Texas Supreme Court set out three factors relevant to determining if personalty has become a fixture, *i.e.*, a permanent part of the realty to which it is affixed: the mode and sufficiency of annexation, the adaptation of the article to the use or purpose of the realty, and the intention of the party who annexed the personal property.").

[81] *See SDI's MSJ* at 1; Invoice #13735, *SDI's MSJ* at Exh. 2 (itemizing the cost of "47.5 Days Engineering Services" as $47,500.00).

materials to incorporate into a building.[82] And machines like these are typically affixed to the real property by bolts, though Texas case law treats them as fixtures "whether they [are] bolted to the floor or not."[83]

The Debtor has presented no evidence to dispute that the machines fall squarely within the definition of "trade fixtures" under Texas law.[84] Instead, the Debtor argues only that whatever lien SDI asserts could have attached only to the ***real*** property and that, consequently, the lien is unenforceable because SDI filed a *Partial Release of Lien*.[85] The court disagrees. In *Demay*, which the Debtor failed to distinguish both in its briefs and at oral arguments, Judge Harmon affirmed the bankruptcy court's ruling, finding a lien in favor of McCaffety even though Demay had leased the building where its factory was located.[86] When Demay sold all of its assets in bankruptcy, McCaffety's lien attached to the proceeds from the sale of the electrical components.[87] Put simply, on the issue of whether a mechanic's lien can attach to trade fixtures installed at leased premises, the relevant facts of *Demay* are nearly identical to the facts in this case.[88] Thus, there is no genuine dispute of material fact whether a statutory mechanic's lien can attach to trade fixtures like the machines in this case.

---

[82] Mr. Arn's allegations that Mr. Bomer misrepresented his qualifications and was *under*qualified to perform the work only support the notion that installing these machines correctly is far more difficult than plugging in a refrigerator. *See* Tape Recording, 8/15/2019 Hearing at 11:18:24 a.m.

[83] *See Phelan*, 14 S.W. at 295.

[84] *See C.W. 100 Louis Henna, Ltd. v. El Chico Restaurants of Texas, L.P.*, 295 S.W.3d 748, 754-55 (Tex. App.—Austin 2009, no pet.) ("The term 'trade fixture' has been defined many times by the courts. . . 'It is now well settled that, as between a landlord and his tenant, the term 'trade fixtures' refers to and means such articles as may be annexed to the realty by the tenant to enable him properly or efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which he is engaged while occupying the premises, and which can be removed without material or permanent injury to the freehold.'").

[85] *See* ECF 91, 98.

[86] *See* 471 B.R. at 513.

[87] *Id.* at 518 n. 13.

[88] Other courts applying Texas law have also reached similar conclusions with regard to extending mechanic's liens to removable trade fixtures. *See, e.g., In re Bigler LP*, 458 B.R. 345, 371-74 (Bankr. S.D. Tex. 2011) (extending mechanic's lien to contractor that furnished custom boiler system even though boiler units were removable without injury to building); *Houk Air Conditioning, Inc. v. Mortg. & Tr., Inc.*, 517 S.W.2d 593, 595 (Tex. Civ. App.—Waco 1974, no writ) (extending mechanic's lien to contractor that furnished and installed a furnace, an air conditioning coil, compressor, thermostat and condensing unit).

Finally, there may be some question whether SDI's installation of these machines constitutes "construction or repair," as the statute requires. Black's Law Dictionary defines "construction" as "The act of building by combining or arranging parts or elements; the thing so built."[89] This court believes that, when construing the language of Section 53.021(a) "liberally" for the express purpose of "protecting laborers and materialmen," SDI's activities fit within the meaning of "construction."[90] After the Debtor leased its premises from Turner's Machinery, Inc. and purchased its machines, it could not immediately begin operating its business. There was, at least, one intermediate step that involved the installation of industrial machines into the building. Moreover, the Debtor was incapable of installing the machines itself. It required the skills and materials of a specialist—hence, the Debtor hired SDI, allowed Mr. Bomer to provide "engineering services" at its business for eight months, and paid SDI over $40,000 of the $120,000 it was billed. In other words, the Debtor hired SDI to help "construct" a functional roll facility from the Debtor's nonfunctional leased premises, and this construction involved the installation of machines that were affixed to the real property as trade fixtures. Accordingly, there is no genuine dispute of material fact that SDI furnished labor and materials to construct a building.

Having satisfied all four elements of Section 53.021(a) of the Texas Property Code, SDI is entitled to a statutory mechanic's lien. However, the enforceability of SDI's lien depends upon whether SDI properly perfected the lien.

*5. There is No Genuine Dispute of Material Fact that SDI Properly Perfected its Mechanic's Lien in Accordance with Texas Property Code Sections 53.051-53.054.*

SDI successfully perfected its lien in accordance with Chapter 53 of the Texas Property Code. In order to perfect a lien, a party must "file an affidavit with the county clerk of the county

---

[89] CONSTRUCTION, Black's Law Dictionary (11th ed. 2019).
[90] *See Hayek*, 478 S.W.2d at 795; *Whirlpool*, 517 S.W.2d at 269.

in which the property is located . . . not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues."[91] Moreover, "indebtedness accrues" to an original contractor:

> (1) on the last day of the month in which a written declaration by the original contractor or the owner is received by the other party to the original contract stating that the original contract has been terminated; or (2) on the last day of the month in which the original contract has been completed, finally settled, or abandoned.[92]

And the affidavit must include, in pertinent part: "(1) the signature of the person asserting the lien; (2) a sworn statement as to the dollar amount of the claim; (3) a general description of the work and materials furnished; (4) the name and address of the person whom the claimant asserts the lien against; (5) a description of the property where the materials and services were furnished; (6) the claimant's address; and (7) notice within five days of the filing of the affidavit."[93]

Here, SDI has a properly perfected statutory mechanic's lien. SDI submitted a copy of a *Lien Affidavit & Claim* with its summary-judgment evidence.[94] The Exhibit also contains (1) a sworn statement of the amount of the claim; (2) the name and address of the Debtor as the reputed owner of the machines, including Richard Arn's name; (3) a description of the work done; (4) the name and address of the original contractor, Southwest Dynamics, Inc.; (5) a legal description of the property relating to the mechanic's lien; (6) the claimant's (*i.e.* SDI's) address; and (7) a certificate of notice.[95] SDI sent the final invoice to the Debtor on April 29, 2016, so the indebtedness for SDI's services probably accrued on or around this day.[96] Given that August is the

---

[91] Tex. Prop. Code Ann. §§ 53.051, 53.052 (West 2019).

[92] *Id.* § 53.053.

[93] *Id.* § 53.054.

[94] *SDI's MSJ* at Exh. 14. The final page of Exhibit 14 is a copy of a receipt from the County Clerk's office that reads: "Filed and Recorded, Official Public Records, John F. Warren, County Clerk, Dallas County, TEXAS, 08/12/2016 12:45:22 PM, $74.00." The receipt is stamped with an official seal and signed by a representative of the office.

[95] *Id.* The *Lien Affidavit & Claim* was also properly notarized.

[96] *Id.* (Invoice #13744). The date that a contractor completes its work plays a crucial role in determining whether the contractor properly perfected its mechanic's lien. Tex. Prop. Code Ann. §§ 53.051, 53.053 (West 2019). Accordingly, the bankruptcy court notes that SDI claims it stopped performing services for the Debtor in *May* of 2016, as opposed

fourth calendar month after April and that SDI filed its *Lien Affidavit & Claim* on the twelfth day of August, there is no genuine dispute that SDI complied with Section 53.052 and filed its *Lien Affidavit & Claim* "not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrue[d]" and, therefore, properly perfected its statutory mechanic's lien.[97] Accordingly, SDI properly perfected its statutory mechanic's lien and the only remaining issue is the amount of the underlying debt.

B. *SDI is, Alternatively, Entitled to a Lien Under the Texas Constitution.*

Even if SDI does not have a statutory mechanic's lien, SDI is, alternatively, a secured creditor because it is entitled to a constitutional artisan's lien ("constitutional lien") for the value of both the labor and materials furnished on the trade fixtures. Article 16, Section 37 of the Texas Constitution provides:

> Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.[98]

In some respects, the constitutional lien is more robust than the statutory mechanic's lien. For instance, it is self-executing and arises automatically without any filing of notice or any other activity.[99] Further, a constitutional lien is not dependent upon possession regardless of whether the claimant works on a building or on personal property.[100]

Yet, despite the Texas Supreme Court's ancient directive that this constitutional lien provision "is as broad as language can make it," the courts have developed three limitations on the

---

to April, the date of Invoice #13744. *SDI's MSJ* at 2. However, under the court's interpretation of the perfection statutes, whether SDI stopped in April or May of 2016 should not make a difference to whether SDI perfected its lien.
[97] *See id.*; Tex. Prop. Code Ann. § 53.052 (West 2019).
[98] Tex. Const. art. XVI, § 37.
[99] *See In re A & M Operating Co., Inc.*, 182 B.R. 997, 1000 (E.D. Tex. 1995), *aff'd sub nom. In re of A&M Operating Co., Inc.*, 84 F.3d 433 (5th Cir. 1996) (quoting *Bassett v. Mills*, 34 S.W. 93, 95 (Tex. 1896)).
[100] 50 Tex. Jur. 3d Liens § 44 (citing *Shirley-Self Motor Co. v. Simpson*, 195 S.W.2d 951 (Tex. Civ. App.—Fort Worth 1946)).

lien's availability.[101] First, the lienor must be in direct privity with the owner of the article or building.[102] Second, the constitutional lien extends only to work performed on an "article" or "building," as explicitly stated in the language of Section 37.[103] Third, only mechanics, artisans and material men may claim a constitutional lien.[104] The summary-judgment evidence shows that SDI incurred materials costs of $23,789 and billed the Debtor a total of $125,926. The difference, $102,137, presumably relates to the 800 labor hours Mr. Bomer incurred providing services to the Debtor. Thus, given that Mr. Bomer furnished both labor and materials and that the Texas Constitution extends a lien for the value of "labor done . . . *or* material furnished," SDI is potentially entitled to a constitutional lien on the combined value of its labor and materials.[105] After reviewing the case law and the summary-judgment evidence, the bankruptcy court determines that SDI is eligible to claim a constitutional lien on the full value of the work performed and materials furnished (*i.e.* $125,926), contingent upon resolution in SDI's favor of the underlying dispute regarding the alleged damage SDI caused to the Debtor's equipment.

   *1. SDI Qualifies as a "Mechanic," an "Artisan," and a "Materialman."*

   As mentioned, only "mechanics, artisans, or material men" may claim a constitutional lien in Texas, so SDI may claim one only if Mr. Bomer fits within the meaning of those terms. Several years ago, Judge Jeff Bohm published a comprehensive opinion that analyzed the constitutional lien in Texas and defined the relevant terminology.[106] Under Texas law, a ***mechanic*** is "a person skilled in the practical use of tools, a workman who shapes and applies material in the building of

---

[101] *See In re A & M Operating Co., Inc.*, 182 at 1000 (quoting *Bassett v. Mills*, 34 S.W. 93, 95 (Tex. 1896)).
[102] *Id.* The first limitation plays a particularly important role in cases involving subcontractors but not in cases like this, where SDI contracted directly with the Debtor. Another implication of this limitation is that the constitutional lien is ineffective against a bona fide purchaser for value without prior notice of the lien.
[103] *Id.* at 1001.
[104] *Id.*
[105] *See* TEX. CONST. art. XVI, § 37 (emphasis added).
[106] *In re Bigler LP*, 458 B.R. 345, 375 (Bankr. S.D. Tex. 2011).

a house or other structure mentioned in the statutes; a person who performs manual labor."[107] Similarly, an ***artisan*** is "one skilled in some mechanical craft; one who is employed in an industry or mechanic art or trade," or "one trained for manual dexterity in some mechanic art or trade."[108] And, finally, a ***materialman*** is "a person who does not follow the business of building or contracting to build homes for others, but who manufactures, purchases or keeps for sale materials which enter into buildings and who sells or furnishes such material without performing any work or labor installing or putting them in place."[109]

Whereas one who labors to ***install*** materials into a building qualifies for a constitutional lien, one who merely ***furnishes*** equipment does not. In *Bigler*, two creditors in the bankruptcy each provided distinct services to the Debtor and later sought to claim a constitutional lien.[110] The first, Shaw, "fabricated and ***installed*** a process piping system" at the Debtor's facility.[111] The second, Halgo, "furnished boilers and related equipment" to the Debtor's facility.[112] The parties stipulated that Shaw was a "mechanic" or "artisan" and that it was also entitled to a constitutional lien on the process piping system that it fabricated for Bigler.[113] The parties further stipulated that Halgo was a "materialman," but not a "mechanic" or "artisan," because it "purchased materials from various manufacturers and furnished the materials to Bigler ***without performing any work or labor installing them or putting them in place; indeed, it was Shaw who installed the Boiler system***."[114]

---

[107] *Id.* (citing *Warner Mem'l Univ. v. Ritenour*, 56 S.W.2d 236, 237 (Tex. Civ. App.—Eastland 1933, writ ref'd)).
[108] *Id.*
[109] *Id.* (citing *Huddleston v. Nislar*, 72 S.W.2d 959, 962 (Tex. Civ. App.—Amarillo 1934, writ ref'd)).
[110] *Id.* at 360-62.
[111] *Id.* (emphasis added).
[112] *Id.* at 354.
[113] *Id.* at 378.
[114] *Id.* at 375.

In this case, SDI qualifies as an artisan, mechanic, and a materialman. Like Shaw, who qualified as an artisan and mechanic because it installed a piping system into the building, SDI qualifies as an artisan and mechanic not only because Mr. Bomer is "skilled in some mechanical craft" and "skilled in the practical use of tools," but also because the unpaid invoices giving rise to a lien in this case stem primarily from the 800 hours that Mr. Bomer spent *installing and repairing* complex industrial machines at the Debtor's business.[115] And just as Halgo qualified as a materialman because it "purchased materials from various manufacturers and furnished the materials to Bigler," SDI also qualifies as a materialman because the invoices that Mr. Bomer submitted include many line items reflecting the cost of specialized materials he had to order to service the Debtor's machines.[116] The evidence here further supports that SDI qualifies as all three of an artisan, mechanic and materialman because, unlike Bigler, which hired two separate contractors to furnish and install a piping system, the summary-judgment evidence indicates that Mr. Bomer was truly a one-man show, ordering parts, repairing the machines and installing them over the course of several months spent at the Debtor's facility. Accordingly, the court concludes that SDI qualifies as an artisan, mechanic and materialman for purposes of claiming a constitutional lien.

2. *SDI Furnished Labor and Materials to "Repair" an "Article."*

Artisans, mechanics and materialmen can only claim a constitutional lien if they "*made*" or "*repaired . . . articles*" or "*buildings*."[117]

Halgo did not repair the equipment that Shaw incorporated into the boiler system, so Judge Bohm had to determine whether Halgo "made articles" and could claim a constitutional lien for

---

[115] *See id.*
[116] *See id.*
[117] *See id.* at 374 (emphasis added) (quoting TEX. CONST. art. XVI, § 37).

the value of his labor and materials.[118] To answer this question, Judge Bohm had to first define the operative terms. Looking to "to the usual and ordinary definition of 'articles' and 'made' because they are not technical terms," Judge Bohm observed that "*made*" means "'produced or manufactured artificially' and 'put together of various ingredients,'" while "*article*" means a "'particular object or substance, a material thing or a class of things.'"[119] Halgo ran an "equipment packager integrator" business, "which means that it sizes and packages the boiler units to meet the customer's system demands."[120] Contrast Halgo, who "bought all of the pieces from various companies," to Shaw, who "put the parts together to make it whole," and one can see how it was Shaw's work, alone, that rose to the level of "made."[121] Of particular relevance here, Judge Bohm noted a "'constitutional lien attaches to buildings and *special-order* articles,'" which he defined as "articles made especially for a purchaser pursuant to a special order and in accordance with the purchaser's plan or specifications."[122] Ultimately, Judge Bohm concluded that Halgo did not make the articles it furnished because "[e]ven if Halgo had put parts together . . . merely connecting completely manufactured articles is not 'making' a final article."[123]

SDI is entitled to claim a constitutional lien because it was hired not only to install the machines, but it was also required to repair them, and these machines rise to the level of special-order articles. The uncontroverted evidence was that the Debtor bought the machines used and they were in a nonfunctional state when Mr. Bomer started working on them. That SDI did not "make" the machines Mr. Bomer repaired does not matter. It matters only that Mr. Bomer *either*

---

[118] *See id.* at 377.

[119] *See id.* at 375-76 (citing *Ball v. Davis*, 18 S.W.2d 1063, 1067 (1929); *In re: HYDRO-ACTION, INC., Debtor*, 2004 WL 3104500, *11 (Bankr. E.D. Tex. 2004)).

[120] *Id.*

[121] *Id.* at 377-78.

[122] *Id.* (emphasis original) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741-42 (Tex. 2005); *Whirlpool*, 517 S.W.2d at 268) (concluding the boilers Halgo furnished were not special-made because they could "easily" be re-used by another company).

[123] *See id.*

"made" or "repaired" a building or article. Furthermore, unlike the boilers in *Bigler*, which were ordered to specification but otherwise could be "easily" reused by another business, the machines in this case needed to be fine-tuned to the Debtor's specifications. Unlike *Bigler*, where Halgo simply sourced two boilers for Bigler and then handed them over to Shaw to install, in this case, the Debtor sought out someone qualified to ***remanufacture the machines to specification*** and then ***install and integrate them into the rest of the Debtor's floorplan to create a functional machine shop***. And unlike Halgo, who simply sourced the boilers and maybe purchased parts for installation, SDI purchased parts ***that were necessary to repair the machines to specification***. As a result, SDI is entitled to claim a constitutional lien for the value of its labor and materials on the machines he repaired.

### C.  *The Amount of SDI's Allowable Claim Remains an Open Question.*

Circumstances that bar collection of the underlying debt may prevent enforcement of a lien.[124] At the current juncture, the parties are disputing whether or not SDI is secured without having first addressed the (arguably preliminary) issue of whether SDI ***is even a creditor***. In other words, the Debtor has alleged that it has a $150,000 counterclaim that eliminates SDI's entire secured claim. Thus, the Debtor should file an Original Complaint to open an Adversary Proceeding so that the parties may present additional evidence and fully adjudicate the issue of the Debtor's alleged counterclaim and whether SDI has an allowable claim as to which its mechanic's lien is enforceable.[125]

---

[124] 50 Tex. Jur. 3d Liens § 44; *see also Sec. Lumber Co. v. Weighard Constr. Co.*, 413 S.W.2d 745, 748 (Tex. Civ. App.—Texarkana 1967), *aff'd sub nom. Univ. Sav. & Loan Ass'n v. Sec. Lumber Co.*, 423 S.W.2d 287 (Tex. 1967) (observing materialman's liens are "inseparable from the debt").
[125] *See* Fed. R. Bankr. P. 7001.

## VI.        Conclusion

SDI has presented sufficient summary judgment evidence to demonstrate that there is no genuine dispute of material fact as to whether it is entitled to both a statutory mechanic's lien and a constitutional lien. In its *Debtor's MSJ* and *Debtor's Response*, the Debtor has failed to present any evidence to create a material fact issue regarding SDI's purported mechanic's lien. Instead, the Debtor's argument stands almost entirely on the notion that any lien SDI asserts could have attached only to the real property (*i.e.* the Debtor's leased premises) and, thus, was terminated when SDI filed its *Partial Release of Lien*, which released Turner's Machinery, Inc. (*i.e.* the real property owner) from SDI's purported liens.[126] However, bankruptcy case law interpreting the relevant sections of the Texas Property Code clearly demonstrates that mechanic's liens can attach to a debtor's trade fixtures even though the trade fixtures are affixed to leased premises.[127] Given that the machines in this case fit squarely within the definition of "trade fixtures," and that SDI perfected its lien according to statute in a timely fashion, SDI has demonstrated that there is no genuine dispute of the material fact it is entitled to a statutory mechanic's lien. Alternatively, SDI has also shown it is entitled to a constitutional lien, pursuant to Article XVI of the Texas Constitution.

WHEREFORE, SDI is granted summary judgment as to its secured status and partial summary judgment to the Debtor is denied.

#### END OF MEMORANDUM OPINION AND ORDER ####

---

[126] *See* ECF 91, 98.
[127] *See* discussion *supra* Part V.A.4.