**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: § | CASE NO.: | 18-34196-SGJ7 |
| § | | |
| **CORETECH INDUSTRIES, LLC** § | | |
| § | | |
| DEBTOR § | CHAPTER NO.: | 7 |

| | | |
|---|---|---|
| **AREYA HOLDER AURZADA,** § | | |
| **CHAPTER 7 TRUSTEE,** § | | |
| PLAINTIFF § | | |
| VS. § | ADVERSARY NO. _____ | |
| § | | |
| **SOUTHWEST DYNAMICS** § | | |
| **SERVICES, INC.** § | | |
| **d/b/a SOUTHWEST DYNAMICS, INC.,** § | | |
| DEFENDANT § | | |

**ORIGINAL COMPLAINT TO RECOVER MONEY, COUNTERCLAIM,
AND DISALLOW THE CLAIM OF SOUTHWEST DYNAMICS, INC.**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Areya Holder Aurzada, Chapter 7 Trustee of the bankruptcy estate of Coretech Industries, LLC, and files this *Original Complaint To Recover Money, Counterclaim, And Disallow The Claim Of Southwest Dynamics, Inc.* against Defendant, Southwest Dynamics, Inc., and in support thereof would respectfully show as follows:

**I. JURISDICTION**

1.   This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S. C. § 157(b)(2)(C),  28 U.S. C. § 157(b)(2)(O), 28 U.S. C. § 157(b)(2)(B), and 11 U.S.C. § 1334. This matter is properly brought as an adversary proceeding pursuant to Bankruptcy Rule 7001(1).

2. Defendant, Southwest Dynamics, Inc., submitted itself to the jurisdiction of the bankruptcy court by filing its proof of claim against Debtor, Coretech Industries, LLC.

3. This adversary proceeding is related to the Coretech Industries, LLC Bankruptcy Case. The proceedings affecting the liquidation of the assets of the estate and recovery of money for the benefit of the bankruptcy estate are core proceedings pursuant to 28 U.S. C. § 157(b)(2)(C) and 28 U.S. C. § 157(b)(2)(O) as is the disallowance of a claim against the estate pursuant to 28 U.S. C. § 157(b)(2)(B).

4. The Trustee consents to the entry of a final order or judgment by this Bankruptcy Court.

## II. PARTIES

5. Areya Holder Aurzada ("Trustee") is the Chapter 7 Trustee for Debtor, Coretech Industries, LLC in the above-referenced main bankruptcy case.

6. Defendant, Southwest Dynamics Services, Inc. d/b/a Southwest Dynamics, Inc., (hereinafter referred to as "SDI" and "Defendant") may be served with summons by its registered agent, Richard Bomer, at 2004 Royalwood Drive, Arlington, TX 76006.

7. Prior to filing for bankruptcy, Debtor, Coretech Industries, Inc. ("Coretech"), had filed a counterclaim against SDI in a state court action against Defendant for common law fraud, negligence, negligent misrepresentation, and the damages SDI caused to Coretech's machinery as described herein styled *Southwest Dynamics, Inc. v. Coretech Industries, LLC, Richard Arn, Robert Foster, & Mary Ann Temple-Lee*, in the County Court No. 4, Dallas County, Texas, Cause No. CC-16-04179-D. A true and correct copy of *Defendant Coretech Industries, LLC's Original Counterclaim* is attached herein and incorporated by reference as Exhibit A.

### III. BACKGROUND / FACTS

8. Prior to October 1, 2015, Debtor purchased a LeBlond lathe that was in good condition for a purchase price of $450,000.000, a Lehman lathe (also referred to as a Subarc welding machine and control) for $59,500.00, and a Giddings & Lewis boring mill for $125,000.00 from Prestige Equipment, Corp.

9. On or about October 1, 2015, Debtor called SDI to install computer control equipment at Debtor's warehouse at 8300 South Central Expressway, Dallas, Texas for a cost of $12,000.00 (twelve thousand dollars) to $15,000.00 (fifteen thousand dollars).

10. SDI requested $125.00 per hour, but Debtor responded that was too high as Debtor was only willing to pay $75.00 per hour for the installation of the Lehmann lathe, so the parties agreed to a cost of $12,000.00 (twelve thousand dollars) to $15,000.00 (fifteen thousand dollars).

11. Mr. Richard Bomer ("Bomer"), on behalf of SDI, represented to Debtor that SDI could perform the work that was requested by Debtor and that he was an expert equipment installer who had direct knowledge and experience in installing, maintaining, and servicing the equipment at issue.

12. Not only did Bomer lack the requisite knowledge to perform the work that Debtor had engaged SDI to perform, he ordered and billed Debtor for hours and equipment that were not needed.

13. After Bomer completed his services on the LeBlond lathe and released the lathe for basic operation, the operator proceeded to home the lathe X-Axis, but during the basic homing cycle the carriage over-traveled and completely missed the hard limit switch (which is the final safety system that keeps the carriage from crashing into the lathe).

14. After over-traveling, the carriage crashed into the lathe with enough force that it broke the compound casting.

15. Bomer had failed to set the soft travel limits in the control software and Bomer also failed to verify the hard travel limits.

16. An experienced and knowledgeable installer would have checked and verified the travel limits before releasing the equipment to an operator.

17. Bomer's negligence significantly devalued the LeBlond lathe.

18. Debtor also experienced a spindle drive fault, and Bomer purportedly spent several days analyzing the spindle drive and related system to determine the cause of the spindle drive fault.

19. Bomer also performed the final installation work on Debtor's Giddings & Lewis boring mill, but he failed set the hard and soft limits on this valuable piece of machinery as well.

20. The W-Axis on the mill table missed both the hard and soft limits and over-traveled in the direction of the mill column which caused the table to crash into the mill column and break the glass access scale reader head.

21. Bomer's negligence devalued the Debtor's Giddings & Lewis boring mill.

22. Additionally, the mill repeatedly experienced an X-Axis moving error that prevented the use of the rapid travel function which limited the ability of the machine to operate at full capacity.

23. Bomer represented to Debtor that he had the knowledge and experience in building the required control circuitry for Debtor's weld lathe and the parties agreed to a cost between $15,000.00 to $18,000.00.

24. Bomar did not have the knowledge or experience necessary to perform this service, and Bomar spent many days speaking with factory representatives and control suppliers to learn how to perform this work and how to make the equipment work.

25. Debtor was thus asked to pay for Bomar to obtain information that Bomar claimed to already know.

26. Debtor never agreed to pay for Bomar's education.

27. Debtor called different technicians, Control Concepts for the spindle drive fault and Apollo Machine Tool Services for the X-Axis drive, and each of these technicians were able to resolve these respective issues in a matter of hours.

28. Bomar claimed to have spent a substantially large number of hours attempting to work on Debtor's machinery.

29. On or about January 1, 2018, Bomar finally admitted during his deposition that he had actually never worked on lathes like the ones he tried to work on for Debtor.

30. Bomar further admitted during his deposition that he also had never worked on the same model mill as the Debtor's Giddings & Lewis boring mill for anyone else, ever.

31. Even though Bomar provided an estimate of cost of $12,000.00 (twelve thousand dollars) to $15,000.00 (fifteen thousand dollars), despite numerous requests for an invoice, SDI waited until months later, February 2016, to ultimately bill Debtor for 65 hours of installation time, about 213 hours of repair time, and 6 hours of travel time at $125.00 per hour.

32. Debtor never agreed to pay SDI an hourly rate for any work or services.

33. Debtor never agreed to pay for SDI's travel time.

34. Debtor hired SDI based on Bomar's estimated cost of $12,000.00 (twelve thousand dollars) to $15,000.00 (fifteen thousand dollars).

35. Debtor made several payments to Defendant, including but not limited to:

   a. $12,000.00 by check number 5074 dated February 5, 2016,

   b. $6,000.00 by check number 5086 dated February 12, 2016,

   c. $2,000.00 by check number 5116 dated February 19, 2016,

   d. $2,000.00 by check number 5115 dated February 25, 2016,

   e. $2,792.50 by check number 5165 dated April 1, 2016,

   f. $7,765.00 by check number 5170 dated April 6, 2016,

36. Ultimately, Debtor paid SDI approximately $40,618.40 for its services.

37. Defendant made numerous false representations to Debtor of which Defendant intended for Debtor to rely upon, including but not limited to:

   a. Defendant had the knowledge, experience and qualifications to perform the work needed to properly install the lathes and the Giddings & Lewis boring mill and that he was fully capable of meeting Debtor's desired objectives.

   b. Debtor needed a new field voltage control for the spindle motor to fix the spindle drive fault.

   c. Debtor needed a new replacement encoder.

   d. Defendant's estimated cost to install the LeBlond lathe would be about $12,000.00 (twelve thousand dollars) to $15,000.00 (fifteen thousand dollars).

   e. Defendant 's estimated cost to build the required control circuitry for Debtor's weld lathe would be between $15,000.00 (fifteen thousand dollars) to $18,000.00 (eighteen thousand dollars).

38. Defendant knew that his representations were false when they were made.

39. Defendant made these false representations with a conscious disregard of the rights and interests of Debtor and for the actual purpose of enriching itself at Debtor's expense.

40. Debtor did in fact justifiably rely on each of Defendant's false representations and was thereby induced into hiring Defendant under false pretenses.

41. Defendant's false representations and fraud, described herein, proximately caused substantial damages to Debtor.

42. Debtor's damaged machinery along with all of Debtor's other machinery, equipment, inventory, and other non-excluded assets were sold for $550,000.00 in Debtor's bankruptcy case to SMS Group, Inc.

43. The loss in value of the equipment that Defendant touched is estimated to be $150,000.00.

## IV. GROUNDS FOR RELIEF
### PURSUANT TO 28 U.S. C. § 157(b)(2)(C) and U.S. C. § 157(b)(2)(O).

44. Trustee incorporates all facts stated above into each of the causes of action below.

45. Trustee asserts counterclaims against SDI for fraud, negligence, negligent misrepresentation, and the damages SDI caused to Debtor's machinery pursuant to 28 § 157(b)(2)(C) and 28 U.S. C. § 157(b)(2)(O).

46. Defendant's actions resulted in damage and loss in value to Debtor's previously good condition equipment, which subsequently resulted in lost earnings.

47. Additionally, Defendant's refusal to compensate Debtor for the damages Defendant caused Debtor affects the liquidation of the assets of the estate as these contingent unliquidated causes of action have value to the bankruptcy estate.

48. Due to SDI's fraud, negligence, negligent misrepresentation, and the damages SDI caused to Debtor's machinery, Plaintiff requests that this Court award $150,000.00 to Debtor for the loss in value of the equipment, plus economic damages including but not limited to out of pocket damages, exemplary damages, interest, court costs, and order that the Trustee may recovery this money for the benefit of the bankruptcy estate.

### V. DISALLOWANCE OF SOUTHWEST DYNAMIC, INC.'S CLAIM AGAINST DEBTOR CORETECH INDUSTRIES, LLC PURSUANT TO 28 U.S.C. § 157(b)(2)(B)

49. Trustee incorporates all facts stated above into each of the causes of action below.

50. Based on the fraud, false representations, and negligence committed by Defendant, the Defendant is not entitled to any additional payment from Debtor, and therefore the Trustee seeks disallowance of the entirety of Defendant's claim against Debtor pursuant to 28 § 157(b)(2)(B).

**WHEREFORE, PREMISES CONSIDERED**, Areya Holder Aurzada, Chapter 7 Trustee of the bankruptcy estate of Coretech Industries, LLC, prays Defendant be summoned to appear and to answer herein and that upon final hearing, the Court determine and enter a judgment against the Defendant (a) disallowing the claim of Southwest Dynamics, Inc. against Debtor in its entirety, (b) order in favor of the Trustee's counterclaims against Southwest Dynamics, Inc., and (c) for recovery of the money owed to Debtor from Southwest Dynamics, Inc. for the benefit of the estate, and for such other and further relief to which she may be entitled.

**Dated this 30th of July, 2020.**

                                        Respectfully submitted,

                                        /s/ Sophia Katherine Palat
                                        Sophia Katherine Palat
                                        **Palat, PLLC**
                                        21607 Heather
                                        Lago Vista, TX 78645
                                        Tel: (512) 280-7600
                                        Fax: (512) 852-4464
                                        sophia@palatlaw.com
                                        **Special Counsel for Chapter 7 Trustee,**
                                        **Areya Holder Aurzada**